IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENISE ORENGE,                          )
                                        )
                        Plaintiff,      )
                                        )
           v.                           )    Civil Action No. 04-297
                                        )
ANN VENEMAN, Secretary                  )
U.S. Department of                      )
Agriculture                             )
                                        )
                      Defendant.        )

**MEMORANDUM ORDER**

CONTI, District Judge.

In this memorandum order, the court considers the motion for summary judgment (Doc.

No. 20) filed by defendant Ann Veneman, Secretary of the United States Department of

Agriculture ("defendant"), with respect to all claims asserted by plaintiff Denise Orenge

("Orenge" or "plaintiff") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§ 2000e *et seq*. ("Title VII").  After considering the joint concise statement of material facts,

defendant's motion for summary judgment and the briefs submitted by the parties with respect to

the motion, the court will grant summary judgment in favor of defendant.

**Factual Background and Procedural History**

Plaintiff is a 55-year-old, African-American female who resides in Dormont,

Pennsylvania.  Joint Concise Statement of Material Facts ("J.C.S.") ¶1.  Plaintiff obtained her

high school equivalency through the GED program and has no college degree.  Id. ¶2.  Plaintiff

was an employee of the United States Marshals Service (the "Marshals Service") from 1972 until

1988.  Id. ¶3.  The positions that plaintiff held while employed by the Marshals Service included

co-op student, clerk typist, and Deputy United States Marshal.  Id. ¶4.  As a Deputy United States

Marshal the highest pay grade which she obtained was GS-11.  Id. ¶4.

   Following her employment with the Marshals Service, plaintiff obtained a position with

the Office of Inspector General, United States Department of Agriculture ("OIG-USDA" or the

"Agency") as a criminal investigator.  Id. ¶5.  On February 28, 1988, plaintiff was assigned to an

office in Hyattsville, Maryland and maintained the pay grade of GS-11.  Id. ¶5.  Plaintiff's

responsibilities as a criminal investigator included conducting white-collar investigations

involving various agencies and programs that are administered by the United States Department

of Agriculture.  Id. ¶6.

   In 1989 the Agency promoted plaintiff to GS-12 and reassigned her to Pittsburgh,

Pennsylvania in March of that year.  Id. ¶7.  When plaintiff accepted her position in the

Pittsburgh office she joined the only other investigator, Senior Special Agent Joe Likens

("Likens").  Id. ¶9.  Likens retired in 1994 or 1995 and plaintiff remained the only investigator on

staff until 1997.  Id. ¶9.

   On May 23, 2001, Vacancy Announcement No. OIG-1-89A was posted for the position

of Criminal Investigator (Senior Special Agent), GS-1811-13.  Id. ¶10.  The closing date on the

vacancy announcement was June 20, 2001.  Id. ¶10.  The vacancy announcement also stated that

more than one position may be filled for the following locations: Beltsville, Maryland; King of

Prussia, Pennsylvania; Pittsburgh, Pennsylvania; Raleigh, North Carolina; and Richmond,

Virginia.  Id. ¶11.  Plaintiff applied for the position stated in Vacancy Announcement No. OIG-1-

89A and indicated she would be willing to work in the Pittsburgh, Pennsylvania location.  Id. ¶12.

The official charged with the selection for the available position was Patrick K. Maloney ("Maloney"), a white male, who was also plaintiff's second-level supervisor.  Id. ¶13.  Maloney's position was the Special Agent-in-Charge of the Office of Inspector General ("OIG") of the Mid-Atlantic Region, a region in which he had been working for approximately one year.  Id. ¶13-14. Plaintiff, with respect to her interaction with Maloney during this period, stated:  "I had minimal contact.  I never had any contact with him hardly at all."  Id. ¶14.  At the time of plaintiff's application her immediate supervisor was Harold Stanford who was the Assistant Special Agent-in-Charge and located in Beltsville, Maryland.  Id. ¶15.

Maloney reviewed and evaluated position applicants based upon their application packages.  Id. ¶16.[1]  Application packages generally included: written responses to KSAs (knowledge, skills and abilities), Captain Reports (management reports listing information regarding an agent's investigations), and most recent performance appraisals.  Id. ¶16.  In addition to the application packages, Maloney also considered his own personal knowledge of each applicant.  Id. ¶ 17.  Maloney did not interview the candidates for the available position and was not required to obtain higher-level approval for selecting the applicants.  Id. ¶18.  On September 6, 2001, Maloney selected three agents to fill the vacancy announcement: Douglas

---

[1]In the J.C.S., plaintiff disputed this fact, but unlike defendant and contrary to Local Rule 56.1B(1) of the Local Rules of Civil Procedure for the United States District Court for the Western District of Pennsylvania, cited no evidentiary material of record to support her denial.  A nonmoving party, like plaintiff, must "designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Wolfe, a white male; Gregory Evens, a white male; and Raymond Quijas ("Quijas"), a Hispanic male.  Id. ¶19.

Quijas was employed as a special agent with OIG-USDA from July 31, 1988 through March 30, 1997.  Id. ¶21.  Quijas was employed as a special agent with the Drug Enforcement Administration ("DEA") from March 31, 1997 through June 5, 2000.  Id. ¶22.  Quijas returned to OIG-USDA on June 5, 2000 and was assigned to the Pittsburgh office as a criminal investigator. Id. ¶23.  Quijas had extensive experience working with law enforcement officers, agents, and prosecutors from numerous states around the country.  Id. ¶ 24.  Quijas had a basic understanding of the Spanish language and obtained a college degree with a majority of credits concentrated in criminal justice.  Id. ¶ 25-26.  Quijas also received scholarships and awards for his academic excellence.  Id. ¶ 26.

As a DEA investigator, Quijas's application indicated that he worked on a number of complex drug cases that included international and multi-state investigations.  Id. ¶ 27.  After Quijas returned to the OIG-USDA in 2000, his application showed at least seven food stamp cases that he successfully initiated and conducted within a one-year period.  Id. ¶ 28.  Also after his return to the OIG-USDA, Quijas's application indicated he had worked a complex embezzlement and bank fraud case that he investigated and presented to the Assistant United States Attorney for prosecution.  Id. ¶ 29.  Quijas was selected a number of times throughout his career for special collateral duty assignments such as: defensive tactics instructor, member of a team selected to review the field structure for OIG investigations, and demand reduction officer where he presented lectures on drug use to schools, churches, and community groups.  Id. ¶ 30.

On his most recent performance evaluation, Quijas was rated on five elements as "Outstanding" and on two elements as "Significantly Exceeds Requirements."  Id. ¶31.

Maloney selected Quijas because Quijas's application materials included strong responses to KSAs and Captain Reports showing a number of investigations with good results.  Id. ¶32. Quijas also had superior performance ratings and was identified as a "self-starter" by his immediate supervisor.  Id.

Maloney was aware of the accretion of duties method of promotion and had utilized that method in another promotion decision prior to September 2001.  Pl.'s Ex. 4 (Doc. No. 28 at 27). Maloney did not use that method in making the promotion decision for the senior special agent vacancy because at that time he did not think about it.  Id.  (Doc. No. 28 at 28).

Plaintiff met the basic qualifications that were necessary in order to be considered for the senior special agent vacancy.  Id. ¶33.  Maloney did not select plaintiff based upon her application and the following specific reasons: (1) plaintiff had few investigative results; (2) plaintiff did not complete her work in a timely manner; (3) plaintiff's KSAs did not indicate a wide variety of skills and abilities; (4) plaintiff's overall performance, as noted in the performance appraisals submitted with the applications, was not as consistent and strong as Quijas's performance; and (5) plaintiff's cases were consistently in the overage case category which means that the cases have been initiated and opened for over 150 days and neither the investigation nor the report of investigation had been completed.  Id. ¶ 34.

Plaintiff's most recent performance evaluation, which was submitted along with her application package, indicated an overall rating of "Fully Successful," which is an average rating

and was among the lowest rating of all the applicants. Id. ¶ 35.[2] Plaintiff's Captain Report showed that she had five investigations assigned to her. Id. ¶ 36. One of those investigations was 406 days old, and the other four investigations were routine cases with three of those in the overage case category. Id. ¶ 36.[3]

During the selection process, plaintiff's immediate supervisor brought one of plaintiff's investigation reports to the attention of Maloney. Id. ¶ 37.[4] Maloney concluded that the report was not thorough and a criminal violation was overlooked by plaintiff. Id. ¶ 37.

Plaintiff's immediate supervisor, Harold Stanford, had worked with plaintiff to increase her work productivity and liaison activity with local law enforcement in order to uncover criminal violations. Id. ¶38. Plaintiff had also received counseling concerning her slow closure of cases. Id. ¶39. Plaintiff was assigned cases based on the investigations scheduled for her geographic area, which are assigned to agents as they complete other investigations and are ready for new assignments. Id. ¶ 40.[5] The number and quality of investigations are partly the responsibility of the agent who is to establish liaison contact and develop cases. Id. ¶41. While reviewing the applications, Maloney created a spreadsheet indicating that plaintiff's investigations resulted in only two indictments during the years 1996-2000. Id. ¶ 42.

Plaintiff had several additional performance problems beginning in 1990 when plaintiff received a fourteen-day suspension for falsifying travel and telephone records. Id. ¶43. Plaintiff

---

[2]*See supra* n.1.

[3]*See supra* n.1.

[4]*See supra* n.1.

[5]*See supra* n.1.

also received a letter of reprimand for using profanity in her telephone conversation with a secretary.  Id. ¶44.  Plaintiff received a letter of reprimand for hanging up the phone while conversing with a supervisor.  Id. ¶45.  Plaintiff was placed on a performance plan sometime in 1989 or 1990.  Id. ¶46.  In or about 2000, the government claims that plaintiff misused a government credit card by charging items from Lord & Taylor department store.  Id. ¶ 47.  Plaintiff acknowledged that the use of the government credit card was simply a mistake.  Id. ¶ 47.

Plaintiff was investigated for possible intimidation of a promotion panel member after she referred to that member as a "bitch" and "that whore on the panel."  Id. ¶48.  Plaintiff admitted to only calling the panel member "a female dog."  Id. ¶49.[6]  One of plaintiff's previous supervisors stated that plaintiff "was one of the least productive agents in my group.  She had a difficult time getting her cases out quickly and productively."  Id. ¶50.

During her career since 1989, plaintiff filed approximately six Equal Employment Opportunity ("EEO") complaints, which were concluded in favor of the Agency.  Id. ¶51.  Plaintiff filed EEO complaint number 900927, dated September 27, 1990, alleging discrimination based upon race, sex, and reprisal in response to a fourteen-day suspension that plaintiff received for falsifying various vehicle and travel reports.  Id. ¶52.

Plaintiff filed EEO complaint number 980059, dated October 28, 1997, alleging that she was subject to a hostile work environment in the form of a memorandum about her mileage reports, a telephone call on August 1, 1997, a follow-up memorandum about her work performance and an issue concerning disclosure of personnel information to the Assistant United States Attorney.  Id. ¶56.

_____

[6]*See supra* n.1.

Plaintiff filed an EEO complaint, dated September 2, 1999, alleging discrimination based upon race, sex, and retaliation as a result of her non-selection and promotion to a GS013 senior special agent position with the Agency. Id. ¶ 58. Another EEO complaint number 000269, dated December 13, 1999, was filed on December 14, 1999, again alleging discrimination based upon race, sex, and retaliation relating to her non-promotions. Id. ¶58.

On or about February 25, 1999, plaintiff filed an employment discrimination complaint in the United States District Court for the District of Columbia alleging discrimination based upon race, sex, and retaliation. Id. ¶60. That complaint was later amended on or about March 20, 2000, and filed in the United States District Court for the District of Maryland. Id. ¶60. The amended complaint addressed plaintiff's 1997 and 1999 non-promotions, as well as her hostile work environment claims. Id. ¶60. On September 10, 2002, the allegations in the amended complaint were resolved by the grant of summary judgment in favor of the Agency. Id. ¶61.

The EEO complaint relating to this lawsuit was filed *pro se* by plaintiff as EEO complaint number 020088, dated November 16, 2001 (the "2001 EEO Complaint"). The bases for discrimination asserted by plaintiff in the 2001 EEO Complaint were "Race, Gender, Retaliation for prior EEO activities." Def.'s Ex. I at 1. Attached as part of the 2001 EEO Complaint was "attachment 1" in which plaintiff again asserted discrimination based upon race, gender, and retaliation as a result of her September 6, 2001 non-selection and promotion to GS-13 under Vacancy Announcement No. OIG-1-89. Def's Ex. I at 2; J.C.S. ¶62. In the 2001 EEO Complaint plaintiff protested the promotion of Quijas and claims that she should have been hired because she was solely responsible for performing all the duties within the Pittsburgh office for approximately three years following the retirement of Likens. J.C.S. ¶63. She also complained

with respect to her retaliation claim that: "Since 1989 I have filed a total of six EEO complaints against the agency for discrimination.  During the past twelve years I have applied unsuccessfully, for numerous promotional positions within the Agency."  Def.'s Ex. I at 2.

As one of the grounds for plaintiff's race and gender discrimination claims in this lawsuit, plaintiff testified that, prior to 1999, there was not a black female in the Agency above GS-12. J.C.S. ¶64.  Plaintiff further alleged that Maloney was the Agency official that discriminated against her in this non-selection.  Id. ¶65.  Maloney, however, never made any discriminatory comments directly to plaintiff and plaintiff had no direct evidence that Maloney had knowledge of other discriminatory statements allegedly made by Agency employees prior to making his selection.  Id. ¶66.

Plaintiff claimed that Maloney was retaliating against her in this non-selection for all the plaintiff's prior EEO activity dating back to her first EEO complaint filed in 1990.  Id. ¶67. Plaintiff admitted that she had no direct evidence that Maloney retaliated against her for prior EEO activity.  Id. ¶68.

On July 5, 2002, the Agency acknowledged receipt of plaintiff's 2001 EEO Complaint for discrimination based upon race, gender, and retaliation when she was not selected for Senior Special Agent, GS-13, under Vacancy Announcement No. OIG-1-89.  Id. ¶69.  After the investigation was complete, plaintiff requested a hearing before an Equal Employment Opportunity Commission ("EEOC") administrative judge.  Id. ¶70.

Plaintiff retired from the OIL-USDA on or about December 31, 2002.  Id. ¶¶ 8, 73.

On May 30, 2003, the Agency filed a motion for a decision without a hearing.[7]  Def.'s Ex. I at 6.  Plaintiff did not respond to that motion.  Id.  On July 3, 2003, the administrative judge issued a decision on defendant's motion, utilizing a summary judgment standard, and after making detailed findings of fact, found plaintiff was not discriminated against during the hiring process for the special agent position on the basis of her race, sex, or in reprisal for participation in EEO activity.  Id. at 5-8; J.C.S. ¶71.  On December 1, 2003, the Agency issued a Final Agency Decision, implementing the finding of the administrative judge, and on March 1, 2004, plaintiff timely filed the instant district court action.  J.C.S. ¶72.

On May 17, 2004, defendant filed a motion for partial dismissal of plaintiff's complaint which was granted by this court on August 27, 2004.  Following the grant of the partial dismissal, the only claims remaining in this case were plaintiff's claims asserted under Title VII for 1) a pattern of harassment or hostile work environment, 2) race and gender discrimination and 3) retaliation.  In defendant's pending motion for summary judgment, defendant seeks summary judgment on each of those claims.  In this memorandum order the court will address each claim. During discovery in this case, plaintiff did not take the deposition of Maloney or any other former or present employee of OIL-USDA and did not cite to any evidentiary material in responding to defendant's concise statement of material facts.  Id. ¶74; Doc. No. 27.

---

[7]The administrative judge noted that this kind of motion is governed by regulations patterned after Rule 56 of the Federal Rules of Civil Procedure and is considered after the movant files a statement of facts not in dispute with reference to the record which supports the facts.  The nonmoving party is provided an opportunity to file a response.  Def.'s Ex. I at 5.

**Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249.

The Supreme Court held in Celotex Corp v. Catrett, 477 U.S. 317 (1986), that:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Id. at 324 (emphasis added). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative,  summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

## Discussion

I.   **Failure to Exhaust Administrative Remedies Regarding Pattern of Harassment or Hostile Work Environment Claim**

Defendant argues that plaintiff's claim involving a pattern of harassment or hostile work environment[8] (the "hostile work environment claim"), as stated in her complaint, should be dismissed for failure to exhaust administrative remedies.  In her complaint, plaintiff alleges that defendant "allowed, permitted, and  protected a pattern of harassment. . . ."  Compl. ¶ 25.  The hostile environment claim, however, was never raised by plaintiff in the relevant EEO complaint.

---

[8]      The hostile work environment claim had its genesis in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986), in which the United States Supreme Court recognized that sexual harassment was actionable under Title VII.  In that case, the Court indicated that two types of sexual harassment claims existed under Title VII: (1) a claim based upon a *quid pro quo* arrangement; and (2) a claim based upon an intimidating, hostile, or offensive work environment.  Id. at 66.  The latter claim, more commonly known as a "hostile work environment" claim, was refined in the wake of Meritor to cover other types of discrimination claims as well, including claims of a racially hostile work environment.  See Faragher v. Boca Raton, 524 U.S. 775, 786-87 (1998).

An actionable claim of a hostile work environment requires the plaintiff to demonstrate "by the totality of the circumstances, the existence of a hostile or abusive working *environment* which is severe enough to affect the psychological stability of a minority employee."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (emphasis in original).  To be ultimately successful on a claim of hostile work environment, the plaintiff must demonstrate that the harassment was severe or pervasive to such a degree that the harassment altered the terms and conditions of employment.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998).

The following five elements must be established by a plaintiff bringing a hostile work environment claim pursuant to Title VII: (1) the plaintiff suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) there is a basis for vicarious liability.  See Andrews, 895 F.2d at 1482; see also Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001); Aman v. Cort Furniture, 85 F.3d 1074, 1081 (3d Cir. 1996); West v. Philadelphia Elec. Co., 45 F.3d 744, 753-54 (3d Cir. 1995).  The determination of whether a Title VII plaintiff is able to establish each of the elements to a hostile work environment claim is a fact-intensive inquiry into the "overall scenario" in which the alleged harassment occurred.  Cardenas, 269 F.3d at 261 (3d Cir. 2001).

Def.'s Ex. I at 1-2 (2001 EEO Complaint, including attachment 1).  Plaintiff, however, argues

that the hostile work environment claim was within the+ scope of the complaint by reason of the

addendum – attachment 1 to the complaint –  noting ongoing activity since 1989 and that there is

a factual dispute concerning whether plaintiff attempted to amend the 2001 EEO Complaint.

In order to pursue a discrimination claim under Title VII, a federal employee must timely

exhaust his or her administrative remedies and if the employee did not exhaust the remedies, a

judgment may be entered in favor of the relevant agency.  Robinson v. Dalton, 107 F.3d 1018,

1012 (3d Cir. 1997); Waiters v. Parsons, 729 F.3d 233, 237 (3d Cir. 1984); Ettinger v. Johnson,

518 F.2d 648, 952-53 (3d Cir. 1975).

In Robinson, the court of appeals commented on the purposes of the exhaustion

requirement:

> It is a basic tenet of administrative law that a plaintiff must
> exhaust all required administrative remedies before bringing a
> claim for judicial relief. . . . We have explained that the purposes of
> the exhaustion requirement are to promote administrative
> efficiency, "respect[ ] executive autonomy by allowing an agency
> the opportunity to correct its own errors," provide courts with the
> benefit of an agency's expertise, and serve judicial economy by
> having the administrative agency compile the factual record....

Robinson, 107 F.3d at 1020 (citations omitted).  In order to exhaust administrative remedies, a

plaintiff, among other things, must file a timely charge of discrimination with the EEOC.  The

relevant inquiry relating to what claims may be prosecuted in a district court after a charge was

timely filed with the EEOC was addressed in Robinson.

In Robinson the United States Court of Appeals for the Third Circuit considered, among

other things, "the effective scope to be given a pending EEOC complaint."  Robinson, 107 F.3d

at 1020.  In <u>Robinson</u> the plaintiff Dennis Robinson ("Robinson") was an employee of the Navy

and he argued that he was fired for retaliation for filing prior charges of racial discrimination.  In

1989 Robinson filed a series of complaints with the EEO office of the Navy raising various

claims of racial discrimination and retaliation.  The complaints were consolidated and after an

investigation the EEOC found that the Navy had not discriminated.  Robinson sought

reconsideration of that determination which was denied by the EEOC in 1995.

In 1989, after the complaint had been filed, Robinson, without authorization, was absent

from his job.  He was instructed to explain his reasons for his absence and was notified that his

failure to do so by a date certain would result in action being taken to terminate his employment.

Robinson did not comply with that instruction and he was terminated in 1990.  After his

termination he brought suit alleging he was fired in retaliation for filing the prior charges of

racial discrimination.  The district court dismissed Robinson's complaint based upon, among

other things, his failure to file a timely complaint with the EEOC relating to his termination.

Robinson asserted, among other things, on appeal to the United States Court of Appeals

for the Third Circuit that his prior EEOC complaint had been pending at the time of his

termination, noting that the final determination with respect to his prior EEOC charges occurred

on May 4, 1995.  He argued that, due to the pending EEOC complaint, his termination claims

should have been regarded as being within the scope of his pending EEOC complaint and that he

did not have to initiate additional administrative process with respect to those claims.  The court

of appeals noted, with respect to a motion to dismiss, that questions of timely exhaustion of

administrative remedies are akin to statutes of limitation and are not to be considered under Rule

12(b)(1) of the Federal Rules of Civil Procedure as a lack of subject-matter jurisdiction, but

rather are to be resolved under Rule 12(b)(6) as a motion to dismiss for failure to state a claim. Id. at 1021-23.

The court noted that Robinson "was not inexperienced in the procedures required to maintain a discrimination complaint, having already filed three such complaints." Id. at 1023. In considering whether the claim of retaliation relating to Robinson's termination was within the scope of the previous prior complaints, the court followed the approach of carefully examining "the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis." Id. at 1024.

In Robinson, notwithstanding a request by Robinson,  "the EEOC expressly declined to include his later discharge in its investigation." Id. at 1025. The court of appeals commented that the record did not include the actual EEOC complaints in issue and that there was an overlap between the reasons for the discharge and some of the incidences described in summaries of the complaints – "excessive leave and creating an asbestos hazard." Id. at 1026. Under those circumstances, the court was puzzled by the EEC's failure to investigate Robinson's termination. The court, because of the lack of a record with respect to those matters, remanded the case to the district court to consider the content of the prior complaints and to determine whether the bases for the prior complaints were included in the decision to terminate Robinson and whether the EEC had notice of the plaintiff's claim of retaliatory discharge.

In Hicks v. ABT Associates, Inc., 572 F.2d 960 (3d Cir. 1978), the United States Court of Appeals for the Third Circuit addressed the applicable standard for determining the scope of a civil action asserting claims arising under Title VII. Id. The court recognized: "Once a charge has been filed with the EEC, this court has held that the scope of a resulting private civil action in

15

the district court is 'defined by the scope of the EEC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id. at 966 (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). In Hicks, the court of appeals considered several issues which arose in an action brought under Title VII. The plaintiff was Caucasian and after being terminated from his employment as a supervisor filed *pro se* a charge of discrimination with the EEC. In the charge he checked the box for the type of discrimination as being "race or color," but did not mark the box labeled "sex." In his statement in the charge he referred only to discrimination based upon his race. A few months later he filed *pro se* a second charge and again marked only the box for racial discrimination. The EEC later issued its determination that no reasonable cause existed and notified the plaintiff of the right to sue.

The plaintiff in Hicks filed a *pro se* complaint against the defendant alleging acts of discrimination based upon race and sex. The defendant filed a motion for summary judgment to which the plaintiff, who was *pro se,* responded, but set forth no evidence in the record. The district court granted the motion for summary judgment finding, among other things, that the sex discrimination charge was jurisdictionally barred because the plaintiff had not filed a charge of discrimination based upon sex with the EEC. On appeal the court of appeals noted: "The filing of a charge with the Commission by an aggrieved party and the receipt of a notice of the right to sue are jurisdictional prerequisites to a civil action under Title VII." Id. at 963. The purpose of the jurisdictional prerequisites are so that the EEC may "give notice to the employer and to make an investigation to determine whether there is reasonable cause to believe that the charge is true." Id. This process enables the EEC to seek informally to conciliate the dispute between a former employee and the employer.

16

In <u>Hicks,</u> the record reflected that the plaintiff had attempted to amend his charge with the EEC to include sex discrimination.  The court determined that, by failing to accept the amendment, the EEC in effect failed to comply with its statutory obligations and that failure would not bar a civil suit by the charging party.  In <u>Hicks</u> the court commented that when applying a regulation permitting amendments of a charge "we keep in mind that charges are most often drafted by one who is not well versed in the act of legal description.  Accordingly, the scope of the original charge should be liberally construed."  <u>Id.</u> at 965.

Even if the plaintiff had not attempted to amend the complaint, the court found that summary judgment would still not be appropriate because "the district court did not apply the correct standard in holding that it did not have jurisdiction over the sex discrimination claim."  <u>Id.</u> at 965.  In <u>Hicks</u> the court noted that there was a timely charge filed involving race discrimination "in rather broad terms."  <u>Id.</u> at 967.  Thus, the EEC could have commenced an investigation and in those circumstances "the scope of a resulting private civil action in the district court is 'defined by the scope of the EEC investigation which can reasonably be expected to grow out of the charge of discrimination. . . .'"  <u>Id.</u> at 966 (quoting <u>Ostapowicz v. Johnson Bronze Co.,</u> 541 F.2d 394, 398-99 (3d Cir. 1976)).

In this case, unlike <u>Robinson,</u> the court does have before it the EEC complaint in issue – the 2001 EEO Complaint – and an eight-page decision of the EEC administrative judge denying the claims asserted in the 2001 EEO Complaint.  In the 2001 EEO Complaint, plaintiff made <u>specific</u> allegations of discrimination for race, gender and retaliation for prior EEO activities.  The allegations were not made in broad terms.  In attachment 1, which is part of the 2001 EEO Complaint, plaintiff described the failure to promote and the reasons for protesting Quijas's

promotion.  Specifically, plaintiff referred to her "accretion of duties" and asserted that she was

not promoted because of race, gender and retaliation for her prior EEO activities.  She noted:

"Since 1989 I have filed a total of six EEO complaints against the agency for discrimination.

During the past twelve years I have applied, unsuccessfully, for numerous promotional positions

within the agency."  Def.'s Ex. I at 2.  The administrative judge noted that, prior to the

administrative judge's determination, there were pre-hearing statements presented by defendant

and plaintiff, who was represented by counsel at that time.   Def.'s Ex. I at 6.  In rendering the

decision, the administrative judge considered the investigative file in the case.  Tellingly, only

three claims were considered by the administrative judge:  1) discrimination on the basis of

plaintiff's race; 2) discrimination on the basis of plaintiff's sex; and 3) retaliation against plaintiff

for prior protected activities.  There is no mention in the 2001 EEO Complaint, including

attachment 1, or in the administrative judge's decision of any claim for a hostile work

environment or any facts which would implicate the existence of that kind of claim.

      It is noteworthy that like the plaintiff in Robinson, plaintiff in this case certainly was

aware of how to present a hostile work environment claim since one of the prior EEOC

complaints which plaintiff filed was for a hostile work environment claim.  See J.C.S. ¶56.

      There is no record of any attempt by plaintiff to amend the 2001 EEO Complaint at issue.

Thus, unlike the plaintiff in Hicks and also unlike the plaintiff in Robinson, there was no attempt

by plaintiff to bring a hostile work environment claim to the attention of the EEOC during its

investigation relating to the 2001 EEO Complaint.

      Plaintiff has not adduced any facts of record with respect to the scope of the EEOC

investigation which could reasonably be expected to grow out of the relevant charge of

discrimination, i.e., the 2001 EEO Complaint, other than her claims for race and gender discrimination and for retaliation.  By reason of the 2001 EEO Complaint, its attachment, the investigation as presented, and the facts as presented and found by the administrative judge, the court concludes no reasonable jury could find in favor of plaintiff with respect to her failure to exhaust administrative remedies for the hostile work environment claim.  A reasonable jury could only conclude that 1) the scope of the EEOC investigation which could reasonably be expected to grow out plaintiff's November 16, 2001 EEO charge of discrimination did not include a claim of hostile work environment and 2) plaintiff failed to exhaust her administrative remedies with respect to that claim.  The court will grant summary judgment in favor of defendant with respect to plaintiff's hostile work environment for failure to exhaust administrative remedies.

## II.     Race and Gender Discrimination Claims

### a.  Elements of a prima facie case

Title VII was enacted to prohibit employers from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment.  Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981).  Since 1972 Title VII has required that personnel actions affecting federal employees "shall be made free from any discrimination based on race, color, religion, sex or national origin."  42 U.S.C. § 2000e-16(a).  The Supreme Court recognized that it is often difficult for a plaintiff to prove that an employer acted with "conscious intent to discriminate."  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  One manner in which plaintiffs can meet this ultimate burden of persuasion is by demonstrating that an

employer's stated reason for the challenged action is not the true reason, but rather was a pretext for unlawful discrimination.  Burdine, 450 U.S. at 253.

In McDonnell Douglas, the Supreme Court developed the now familiar burden-shifting framework for courts to utilize as a tool in analyzing disparate treatment claims.  The McDonnell Douglas framework requires a plaintiff alleging a violation of Title VII to first establish a prima facie case of discrimination.  The prima facie case, the elements of which depend upon the kind of claim the plaintiff is alleging, "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection."  Burdine, 450 U.S. at 254; see also Id. at n.6.  In so doing, "the prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'"  Id.

If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.  Simpson v. Kay Jewelers, 142 F.3d 639, 644 n.5 (3d Cir. 1998).  The burden on the defendant at this junction is "relatively light," and the defendant can satisfy this burden "by introducing evidence which, *taken as true*, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. . . . "  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis added)(citations omitted).

Once the defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "'the McDonnell Douglas framework - with its presumptions and burdens' - disappear[s], . . .  and the sole remaining issue [is] 'discrimination *vel non*,'. . . ."  Reeves v. Sanderson Plumbing Products., Inc., 530 U.S. 133 (2000) (citations omitted).  The plaintiff, thus,

has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).

To state a claim for discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that: (1) she was a member of the protected class; (2) she was qualified for the position for which she applied; (3) she was subject to adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's qualifications to fill the position. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253; Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003).

It is undisputed that plaintiff is a member of a protected class for both her race and gender discrimination claims. The basic qualification and eligibility requirements outlined in Vacancy Announcement No. OIG-1-89A were that "applicants must have competitive status, meet OPM qualifications and time in grade requirements by the closing date of the vacancy announcement." Def.'s Ex. B at 2. Plaintiff met the qualification and eligibility requirements for the position described in the vacancy announcement. Plaintiff experienced adverse employment action by not being promoted to a higher position despite her qualifications. Defendant concedes that the first three factors of the prima facie case have been met by plaintiff.

The fourth element of the prima facie case must be addressed due to the lack of clarity with respect to how it should be applied. It is irrelevant that one person in a protected class lost out to another person in a protected class. The key inquiry is whether she lost because of a

decision based upon illegal discrimination.  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996).  In O'Connor, a 56-year-old plaintiff was fired and claimed that his termination was because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (the "ADEA").  Id. at 309.  The court of appeals concluded that since the plaintiff's replacement was forty years of age and within the protected age class, element four of the prima facie case was not met by the plaintiff.  Id. at 310.  The Supreme Court reversed the judgment of the court of appeals because the ADEA prohibits discrimination on the basis of age and not class membership.  The fact that a replacement was substantially younger than the plaintiff was a far more reliable indicator of age discrimination than the fact that the plaintiff was replaced by someone outside the protected class.  Id. 313.

In the instant case the fact that the candidate chosen for the position was a Hispanic male does not weigh on the evaluation of plaintiff's claim.  The prima facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion. . . ."  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977); see O'Connor, 517 U.S. at 313.  To fulfill the requirements of the fourth prong of the prima facie case a plaintiff must show by a preponderance of the evidence that under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's qualifications to fill the open position.  McDonnell Douglas, 411 U.S. at 802.

Plaintiff in her deposition stated that since the retirement of Likens she had assumed the duties of a senior special agent, she had maintained longevity with the Agency since 1988, and she had higher statistics than the person that was eventually hired.  Pl.'s Ex. 2 at 40-41.  Prior to

1999, there was no black female in the Agency above level GS-12.  Pl.'s Ex. 2 at 41.  In addition, there were also several comments made by fellow employees that were racially and sexually charged.  Pl.'s Ex. 2 at 45-50.  Plaintiff, however, acknowledged that Maloney, the sole hiring agent, never made any discriminatory comments directly to her and plaintiff had no direct evidence that Maloney had knowledge of other discriminatory statements allegedly made by Agency employees prior to making his selection.  J.C.S. ¶ 66.  Based upon these facts viewed in the light most favorable to plaintiff, the nonmoving party, the court concludes that for purposes of the motion, the fourth element has been satisfied by plaintiff.  Plaintiff presented sufficient evidence to support an inference that an employment decision may have been based on an illegal discriminatory criterion.  This inference applies to her race and gender discrimination claims.

### b.  The McDonnell Douglas framework

Since plaintiff presented sufficient facts to support a prima facie case the court must address the other factors in the McDonnell Douglas framework.  Once a plaintiff has established a prima facie case the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred for reasons that are legitimate and nondiscriminatory.  Burdine, 450 U.S. at 254.  An employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a reason that was not discriminatory for the adverse employment decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).  It is not necessary for the defendant to persuade the court that it was actually motivated by the reason which it offers.  Burdine, 450 U.S. at 254; see Bd. of Trs. of Keene State Coll. v. Sweeney, 439 U.S. 24, 25 (1978).

In this case, Maloney reviewed the qualifications of Quijas and selected him based upon his application materials which included strong responses to KSAs, Captain Reports showing a number of investigations with good results and his superior performance ratings.  Maloney in his affidavit stated that plaintiff was not selected because her performance was not as consistent and as good as those candidates that were selected.  Pl.'s Ex. 5 at 3.  He referred to plaintiff's KSAs, performance evaluations, lack of completed work, and a lack of various skills as evidence of insufficient performance abilities.  Id.  These objective measures would satisfy defendant's burden of production under McDonnell Douglas.

The last part of the test requires that, "[o]nce the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)."  Fuentes, 32 F.3d at 763.  Once an employer has stated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff in order to survive summary judgment must meet the two-prong test articulated by the United States Court of Appeals for the Third Circuit in Fuentes:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Id. at 764.

### (1)  Prong One

A plaintiff must submit evidence that could cause a reasonable factfinder to discredit the employer's articulated reason for the adverse employment action in order to overcome summary judgment and bring her case to trial.  To discredit the employer's articulated reason, the plaintiff does not need to produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, Sempier v. Johnson & Higgins, 45 F.3d 724, 764 (3d Cir. 1995), nor produce additional evidence beyond her prima facie case.  Fuentes, 32 F.3d at 764. The plaintiff must, however, demonstrate such:

> "weaknesses, implausibilities, inconsistencies, incoherencies [sic], or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence'" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. [Fuentes, 32 F.3d] at 764-65 (quoting [Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)]).

Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998).

The question asked in prong one of the Fuentes test is not whether the employer made the best, or even a sound, business decision; it is whether the real reason for the adverse result suffered by the plaintiff is discrimination.  Keller v. ORIX Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

An employment decision that would create a problem under prong one will likely turn on whether the stated reason for termination is so implausible that a factfinder could not believe it to worthy of credence.  For example, in Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326 (3d Cir. 1995), the plaintiff was fired due to deficient sales performance.  The evidence of record, however, disclosed that the plaintiff received a bonus three months prior to his termination and

that he was the only sales employee in his region to have received such a bonus.  The court held

that, where the primary measure of the employee's performance was his sales, and where he was

the leading salesperson in the region, the employer's stated reason for his termination was

"contradictory to [its] admission that the most important standard of job performance is sales."

Id. at 332.  According to the court, "[a] factfinder could find it implausible that Quaker State

would have fired Brewer for such deficiencies when he was successful in the sole area identified

by Quaker State's own performance incentive program - sales."  Id.

Sempier is another case in which an employer stated the plaintiff was terminated because

of poor performance causing the company to restructure the nature of his responsibilities.  The

evidence of record, however, disclosed that (1) the plaintiff never received any unfavorable

criticism that his performance was poor or inadequate; and (2) the employer failed to produce any

other evidence of poor performance or to make specific allegations of the plaintiff's deficiencies.

Sempier, 45 F.3d at 731-33.  Thus, there was evidence on the record that a reasonable factfinder

could conclude that the reason given in Sempier by the employer was a pretext for age

discrimination.  Id. at 732-33.

In this case, plaintiff contends that the person selected had not been with the Agency as

long as she had and did not have the indictment statistics that she had.  The plaintiff also

contends that throughout the years after she filed her EEO cases, she began to receive fewer

assignments, and some of her cases were prematurely closed.  Id.  Plaintiff alleges she was

denied the opportunity to open new cases which affected her statistics and in turn set up the basis

for pretext.  Id.

Despite the contentions of plaintiff, it is clear from the evidence of record that the basis for plaintiff's non-selection was Maloney's conclusion that she was not the most qualified applicant. Pl.'s Ex. 5 at 3-4. Maloney in his affidavit explained that he reviewed each application, including plaintiff's application, and concluded that she had few investigative results, many of her cases were in the overage category, and she did not complete her work in a timely manner. Id. 4, 7, 11-13. The case reports presented to Maloney indicated that plaintiff had only five investigations assigned to her. Id. at 8. One investigation was 406 days old, and the other four were routine cases, three of which were in the overage category. Id. A spreadsheet prepared by Maloney indicated that plaintiff's investigations resulted in only two indictments during the years 1996-2000. Id. at 13, 15. Plaintiff also admits to receiving counseling for her slow closure of cases. Def.'s Ex. A at 55.

Plaintiff's KSAs (knowledge, skills, and abilities) did not indicate a wide variety of skills and abilities. Def.'s Ex. E at 4. Maloney found inaccuracies in plaintiff's final report of finished investigations that involved failures to conduct interviews properly, failures to account for all of the government's property that had been lost, and failures to recognize criminal violations that were committed in the case. Id. at 8, 12. Plaintiff's performance average in her annual reports consistently reflected a rating of "fully successful," the middle rating based on a five-category scale. Def.'s Ex. C at 11.

Quijas was selected by Maloney to be promoted to the GS-13 position based upon his application and Maloney's conclusion that he was a well-qualified candidate with investigatory experience and well-written KSAs. Def.'s Ex. D at 2, 12-13, 19. Quijas had a college degree with a concentration of credits in criminal justice and several academic awards. Id. at 3, 7. The

year prior to his selection, Quijas successfully initiated seven food stamp cases. Id. at 8. He investigated complex embezzlement and bank fraud cases which were presented to the United States Attorney's Office for prosecution. Id. at 9-10. Quijas was selected several times for collateral duty assignments throughout his career and presented lectures on drug use to schools and other community groups. Id. at 15-16. His supervisor described him as a self-starter and stated that Quijas's career with the OIG-USDA was very promising. Def.'s Ex. E at 13. Quijas's performance evaluation reflected a consistent rating of "outstanding" on five of the seven elements. Def.'s Ex. D at 18.

The court finds that plaintiff failed to present sufficient evidence to allow a factfinder to conclude reasonably that "a discriminatory reason more likely motivated the employer" than the employer's proffered explanation that another candidate was better qualified for the position. Burdine, 450 U.S. at 256. Plaintiff did not succeed in showing by evidence of record that the employer's proffered reason – she was not the best qualified person for the position – "is unworthy of credence." Id. Plaintiff presented insufficient evidence to demonstrate weaknesses, implausibilities, etc., in defendant's proffered reason to find it "unworthy of credence." Plaintiff cannot satisfy her burden of proving that defendant's reason was pretextual under the first prong of the Fuentes test.

### (2) Prong Two

The court must next examine the second prong of the Fuentes framework to determine if plaintiff presented sufficient evidence of pretext. To show that discrimination was more likely than not a cause for the employer's adverse actions, a plaintiff must point to evidence with sufficient probative force that could allow a factfinder to conclude by a preponderance of the

evidence that the protected characteristic was a motivating or determinative factor in the employment decision.  Simpson, 142 F.3d at 644-45.  Relevant evidence that could be relied on in the evaluation of this prong includes: (1) whether the employer has previously discriminated against the plaintiff, (2) whether the employer has discriminated against other people within the plaintiff's protected class or within another protected class, or (3) whether the employer has treated more favorably similarly situated persons not within the protected class.  Id. at 645.

### (A)  Evidence of previous discrimination against plaintiff

Although plaintiff mentions several instances when other Agency employees made discriminatory comments toward her regarding her race and sex,  plaintiff conceded that Maloney, the person she alleges discriminated against her, never made any discriminatory comments directly to her.  She also provided no evidence that Maloney, prior to making his selection for the available position, had knowledge of the discriminatory statements allegedly made by other Agency employees.  Based upon a review of the evidence of record, and plaintiff not disputing the evidence relating to Maloney's lack of knowledge of previous discriminatory comments, there is no basis on which a reasonable jury could find in favor of plaintiff with respect to this factor.

### (B)  Whether the employer has discriminated against other people within plaintiff's protected class or another protected class

In reviewing the Agency's employment practices involving African-Americans and females, the only evidence presented by plaintiff is that prior to 1999 no black females had a position above pay level GS-12.  Pl.'s Ex. A at 22.  The individual that was selected for the position was not an African-American.  He was a male member of the Hispanic minority.

Plaintiff did not present any evidence regarding the status of male African-American employees or the status of female employees that were not African-American within the Agency.

The United States Court of Appeals for the Third Circuit recognized that "[s]tatistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext." Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 542 (3d Cir. 1992). The court of appeals, however, has also commented that raw numerical evidence alone is of little value without a demonstration of its significance to the employer's alleged discriminatory motive. Id.; Keller, 130 F.3d at 1112.

On the record before the court, plaintiff cannot show that defendant discriminated against other African-Americans because plaintiff did not adduce sufficient evidence that the Agency discriminated against African-American employees. Similarly, with respect to gender, plaintiff did not adduce sufficient evidence that the Agency discriminated against other female employees. Based upon the undisputed evidence of record and drawing all inferences in favor of plaintiff, the court concludes a reasonable jury could not find in favor of plaintiff with respect to this factor.

**(C) Whether the employer has treated more favorably similarly situated persons not within the protected class**

The court cannot find sufficient evidence in the record which would enable a reasonable jury to find in favor of plaintiff with respect to the argument that defendant treated plaintiff differently than other employees not within the protected class. Plaintiff in her deposition asserted that she knew of a white male resident agent that did not have "star quality" performance records and did not receive the same comments that she received from Tom Petko. Pl.'s Ex. 2 (Doc. No. 28 at 18). This statement is the only evidence plaintiff presented to show that

30

defendant treated male, non-African American employees differently than the way plaintiff was treated.  This evidence, however, is not sufficiently probative and is not sufficient to enable a reasonable jury to conclude that defendant treated non-protected class members more favorably than those within the protected class.

### c.  Insufficient evidence of race or gender discrimination

Plaintiff presented insufficient evidence of discrimination against her relating to the failure of the Agency to promote her to the GS-13 level position for which she applied.  "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." Orenge v. Veneman, 218 F.Supp.2d 758, 765 (D. Md. 2002).  Based upon the undisputed evidence of record and drawing all inferences in favor of plaintiff, the court concludes that a reasonable jury could not render a verdict in favor of plaintiff with respect to her claims of race and gender discrimination.  Plaintiff presented insufficient evidence to demonstrate that she was as or more qualified for the promotion than Quijas or to establish pretext.  Therefore, summary judgment must be granted in favor of defendant with respect to the plaintiff's claims of failure to promote due to race and gender discrimination.

## III.    Retaliation Claim

With respect to plaintiff's retaliation claim, in order to establish a prima facie case of retaliation, plaintiff must demonstrate that: (1) she engaged in protected activity; (2) her employer took adverse action after or contemporaneous with her protected activity; and (3) a causal link exists between her protected activity and the employer's adverse action.  Abramson v. Wm. Patterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001).  The first prong of the prima

facie case requires, at the very least, an informal protest of discriminatory employment practices. Barber v. CSX Dist. Services, 68 F.3d 694, 701-02 (3d Cir. 1995) (citing Summer v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).  The protest, in whatever medium, must specifically relate to the protected conduct allegedly being infringed.  Barber, 68 F.3d at 701.

In this case, plaintiff asserts (and defendant does not dispute) that the filing of five EEO complaints constituted protected activities.  Those complaints were dated September 27, 1990, October 28, 1997, September 2, 1999, December 13, 1999 and February 25, 1999 (amended on March 20, 2000).[9]  The parties do not dispute, and the court will accept for purposes of summary judgment, that defendant's failure to promote plaintiff on September 6, 2001, constituted an adverse action for purposes of plaintiff's prima facie burden.  See Weston v. Pennsylvania, 251 F.3d 420, 430-31(2001)(quoting Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749 (1998)).  Plaintiff satisfied the first two elements of this retaliation claim.

The dispute with respect to plaintiff's retaliation claim, thus, turns on whether plaintiff can demonstrate a causal link between her protected activity and the adverse action taken by defendant.  With respect to the existence of a causal link between the employee's protected activity and the employer's adverse action, two main factors are relevant: (1) timing and/or (2) evidence of ongoing antagonism.  Abramson v. Wm. Patterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001) ("Temporal proximity . . . is sufficient to establish the causal link. [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period.").

―――――――――――――――

[9]On November 16, 2001, plaintiff filed a sixth EEO complaint – the 2001 EEO Complaint – which gave rise to the instant civil action.  That filing was also a protected activity, but it was filed after the adverse action occurred.

32

The United States Court of Appeals for the Third Circuit has been somewhat ambivalent with respect to whether timing alone is sufficient to satisfy the causation prong of the prima facie case.  See Woodson v. Scott Paper Co., 109 F.3d 913, 920-921 (3d Cir. 1997) ("Temporal proximity is sufficient to establish the causal link."); Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989) (causal link established where plaintiff discharged two days following employer's receipt of the plaintiff's EEOC claim); but c.f. Quiroga v. Hasbro, Inc., 934 F.3d 497 (3d Cir. 1991) (affirming lower court's determination that the timing of the plaintiff's discharge alone did not raise an inference of retaliation); Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (causation prong not established on timing alone where nineteen months passed following protected activity and adverse employment action: "Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.").  Timing, however, in connection with other types of suggestive evidence, is sufficient to demonstrate the causal link.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000).  For example, the court of appeals held that timing combined with evidence of vague or inconsistent reasons given by an employer for an employee's termination was sufficient to satisfy the causation prong of the prima facie case.  Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986); Abramson, 260 F.3d at 289 ("Here, as we found in our discussion of the discrimination claim, [plaintiff] has succeeded in both casting doubt on the reasons [her employer] proffered for her termination, and in demonstrating that those reasons were vague and inconsistent."); see also EEOC v. L.B. Foster Co., 123 F.3d 746, 753-54 (3d Cir.1997), cert. denied, 522 U.S. 1147 (1998).

33

In this case the alleged retaliatory adverse action occurred more than seventeen months after the last protected activity engaged in by plaintiff, i.e., the amendment on March 20, 2000, of her February 25, 1999 complaint filed in district court.  The seventeen-month span of time does not rise to a level of being "4unusually suggestive" and is akin to the situation in <u>Krause</u> where the court of appeals found that a nineteen-month span of time alone could not establish causation. In order to establish causation, plaintiff must, therefore, adduce other evidence suggestive of causation.  She failed to submit probative evidence of ongoing antagonism or implausibilities in defendant's reasons for not promoting her.

Here, defendant was consistent and clear in the reason given for promoting Quijas and not plaintiff: Quijas was promoted because he was a more qualified candidate.  Plaintiff presented no probative evidence of ongoing antagonism during the relevant seventeen-month time span. Based upon the evidence of record and drawing all inferences in plaintiff's favor, the court concludes that a reasonable jury could not find a causal link between plaintiff's protected activities and the adverse action, i.e., the failure to promote her in September 2001.  Summary judgment will be granted in favor of defendant with respect to plaintiff's claim for retaliation.

## Conclusion

After reviewing the undisputed material facts of record and any disputed facts of record taken in the light most favorable to the nonmoving party, the court determines that defendant's motion for summary judgment shall be granted with respect to plaintiff's claims asserted under Title VII for a pattern of harassment or hostile work environment, race and gender discrimination and retaliation.

34

## ORDER

**AND NOW**, this 20th day of September, 2006, upon consideration of the parties'

arguments and supporting documents, **IT IS ORDERED** that defendant's motion for summary

judgment (Doc. No. 20) is **GRANTED**.


By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:      Counsel of record

35